IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAUG WALKER,

     Plaintiff,

v.                                                          CASE NO. 1:15-cv-28-MP-GRJ

MARIA AKRIDGE, DDS,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Defendant Akridge's Motion to

Dismiss Plaintiff's First Amended Complaint and Incorporated

Memorandum of Law. (ECF No. 46.) Plaintiff, an inmate in the custody of

the Florida Department of Corrections, who is proceeding *pro se* in this 42

U.S.C. § 1983 action, has filed a response in opposition to Defendants'

motion.  (ECF No. 49.)  For the reasons discussed below, it is

recommended that Defendant's motion to dismiss should be granted in

part and denied in part.

## I. BACKGROUND

Plaintiff's claim stems from the dental treatment he received at

Lancaster Correctional Institution ("LCI") between May 13, 2013 and

September 4, 2014.  Plaintiff states that in April of 2013, an orthodontist —to whom Plaintiff refers to as Dr. Doe— at South Florida Reception Center ("S.F.R.C.") removed braces from Plaintiff's teeth. Due to time constraints, Dr. Doe was unable to remove the glue from Plaintiff's teeth. Dr. Doe scheduled for approximately one week later an appointment for the glue to be removed. According to Plaintiff, Plaintiff informed Dr. Doe that he would be transferred to a new institution soon. Dr. Doe told Plaintiff that Plaintiff's appointment was "logged in the computer's database" so he would be seen at the new institution to which he was transferred. (ECF No. 41 at 6 ¶¶1-6.)

On May 13, 2013, Plaintiff was transferred to LCI. During Plaintiff's medical assessment at LCI, Plaintiff informed Defendant — Dr. Akridge, the dentist at LCI—about the glue remaining on his teeth. According to Plaintiff, Defendant told Plaintiff "I will get to that right away. I can't believe S.F.R.C. left it on. Make sure you write me a request soon if you're not seen within the next three weeks." (ECF No. 41 at 7-8 ¶ 28.) Plaintiff asserts that in late May of 2013, Defendant told Plaintiff that she had placed Plaintiff on the waiting list after Plaintiff wrote an inmate request to Defendant. (ECF No. 41 at 6 ¶ 8.)

Plaintiff asserts that in July and August he wrote another request to Defendant explaining that he was having discomfort when eating and brushing his teeth due to the glue left on his teeth and that he had received no responses to his requests for appointments. (ECF No. 41 at 6 ¶ 9.) Plaintiff asserts that during his first stay at LCI, from May 2013 until March 2014, Defendant did not see him and his teeth "started breaking when I brush, & the glue was rubbing on my tongue & the inside of my mouth that created soars [sic] so painful I could not eat for a period of time." (ECF No. 41 at 6-7 ¶¶10-11.)

On March 5, 2014, Plaintiff was transferred back to S.F.R.C. Plaintiff states that, while at S.F.R.C., he requested to be seen by a dentist to have the glue removed from his teeth and a wisdom tooth removed. Plaintiff states that in late May of 2014, he was seen by Dr. Doe and informed Dr. Doe that he had not yet been seen to have the glue removed. Dr. Doe told Plaintiff she did not know why Plaintiff had not yet been seen since his appointment was still in the computer system. Plaintiff states that "Dr. Doe checked [Plaintiff's] teeth & documented numerous cavities and other damages since the last time she seen me."  Dr. Doe made another appointment for the glue to be removed, but Plaintiff was transferred back to LCI before the appointment arrived. (ECF No. 41 at 7 ¶¶ 13-19.)

On July 7, 2014, after Plaintiff was transferred back to LCI, Plaintiff submitted an inmate sick call request.  The request stated he was supposed to "get the glue removed from my teeth, teeth cleaned, and fill ins. Ever since last year April that was suppose [sic] to happen but I keep getting transferred from South Florida every time my appointment comes up. Its in the computer I don't know why I haven't been seen yet." The response stated that Plaintiff would be called out for treatment when he was out of confinement, explaining "We have a waiting list and you were not on it. I have placed you on it so when your name gets to the top I will call you out as long as you are not in confinement." (ECF No. 46-1 at 9.)

On July 14, 2014, Plaintiff's Grievance #16 was received. In Grievance #16 Plaintiff stated:

> I have put in request, informal grievance's [sic], and sick calls to dental about my teeth. I haven't received none of them back [sic]. I'm just going by the proper procedure so I can file my petition. It has been in the computer since last year April from South Florida Reception Center that a appointment [sic] is in the system for my teeth and I still haven't went [sic].

On July 16, 2014, Defendant denied Plaintiff's grievance, stating she had never received any correspondence from Plaintiff and that Plaintiff would be called out for treatment when it was his turn. Plaintiff did not appeal the denial. (ECF No. 46-1 at 5-6.)

On July 17, 2014, Plaintiff's Grievance #37 was received. In Plaintiff's grievance he stated:

> I had a appointment for dental since "last year April" in the computer when I got my braces taken off for my teeth to be cleaned cause the glue on my teeth and fill in's for my cavities. She told me I have to wait until I get out of confinement. That's no time soon and my teeth is getting worser [sic] by the day and I don't get out of confinement until next year sometime. She also said my name will be placed on the waiting list. Since last year I should have been called. No where in chp 33 it say's we can't receive dental treatment in confinement. I know when we get transferred all our medical records and appointment's follow us and I still have no treatment done. "I wrote a informal grievance about this with no respond [sic]." I really need my teeth cleaned and fill in's placed. This is neglecting medical need's. (ECF No. 46-1 at 8.)

Defendant and Acting Warden Tomlinson approved Plaintiff's Grievance #37 on July 28, 2014. The response to Plaintiff's grievance stated that Plaintiff was placed on the waiting list on July 7, 2014 and that Plaintiff would be called out for treatment when his turn arrived regardless of whether he was in confinement.  (ECF No. 46-2 at 9.)

Plaintiff asserts that Defendant was "very angry and mad" at Plaintiff for filing a grievance.  Plaintiff asserts that while Plaintiff was in the medical area, Defendant stated "You want to write grievances I cant [sic] wait until you get in my chair, so I can play in your mouth. If you want dental care get out of confinement. I don't care what no one says. I hope your teeth fall out." (ECF No. 41 at 7 ¶24.)

On August 5, 2014, Plaintiff appealed the response regarding

Grievance #37, even though it was approved. In the appeal Plaintiff stated:

> I had written a formal grievance (attached) and it was approved
> but still I don't feel like the proper action is being taken. I had a
> dental call in the computer since "last year" April and I still haven't
> been seen. Since the some of my teeth have been chipping and
> changing color. The dental should pay to fix all of this themselves
> since they haven't put me on a call out for this. I will be filing a
> petition after this.

(ECF No. 46-2 at 8.)

On September 3, 2014, Plaintiff's appeal was denied. In relevant

part, the response stated:

> You have been advised that you are on the Dental Treatment list
> and you will be called out when it is your turn even if you housed
> in confinement. All dental visits that are determined to be of a
> non-emergent nature will incur a co-payment...Should you
> experience problems, sick call is available so that you may
> present your concerns to your dental staff.

(ECF No. 46-2 at 7.)

Plaintiff alleges that as a result of not receiving dental treatment, his

teeth started deteriorating and breaking, and the glue on his teeth caused

him to develop sores on his mouth and tongue so painful that he could not

eat at times. (ECF No. 41 at 6-7 ¶¶9-11.)

Plaintiff's First Amended Complaint alleges that the Defendant's

failure to provide dental care during his thirteen months at LCI and the

failure to provide dental care because Plaintiff was in confinement

constitute deliberate indifference to his serious dental needs in violation of the Eighth Amendment.  As relief Plaintiff requests the Court to enter a declaration stating that the acts and omissions constitute a violation of his constitutional rights. Plaintiff also requests punitive and compensatory damages for the physical and emotional injuries Plaintiff sustained.

## II.  DEFENDANT'S MOTION TO DISMISS

On November 2, 2015, Defendant filed a motion to dismiss. Defendant attached to the motion the Affidavit of Gregory Arline. (ECF No. 46-1.) Attached to the Arline Affidavit were a log of Plaintiff's formal grievances, a copy of Plaintiff's formal Grievance #16 and Defendant's response to Grievance #16, and a copy of Plaintiff's formal Grievance #37 and Defendant's response to Grievance #37. Also attached to Defendant's motion is the Affidavit of Jacqueline Adams. (ECF No. 46-2.) Attached to the Adams Affidavit were a log of Plaintiff's grievance appeals and a copy of Plaintiff's grievance appeal related to formal Grievance #37.

## III.  STANDARD OF REVIEW

### A.    Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), inmates must exhaust all available administrative remedies before proceeding in federal court.  42 U.S.C. § 1997e ("[N]o action shall be brought with respect to

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner. . .until such administrative remedies as available are exhausted.").  The exhaustion provision is a mandatory precondition to bringing suit in federal court.  *Jones v. Bock*, 549 U.S. 199, 211 (2002).

Additionally, when a defendant raises the issue of failure to exhaust in the context of an inmate's 42 U.S.C. § 1983 action, it is treated as a matter in abatement. *See Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). The Court uses a two part procedure to determine whether a plaintiff has failed to exhaust his remedies.  *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).  First, the Court must review the defendant's factual allegations along with those contained in the plaintiff's response, construing conflicting facts in the light most favorable to the plaintiff.  If, after reviewing these facts, the defendant is entitled to have the complaint dismissed, it will be dismissed.  *Id.*  However, if the complaint is not subject to dismissal, the Court must make findings of fact necessary to resolve the exhaustion issue.  *Id.*

### B.   *Failure to State a Claim*

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009), the Supreme Court of the United States articulated a two-pronged approach for evaluating a motion to dismiss under Rule 12(b)(6): first, the court must determine what

factual allegations in the complaint are entitled to a presumption of veracity; second, the court must then assess whether these facts give rise to an entitlement for relief. In determining whether factual allegations are entitled to the presumption of truth, the Court stated that it was not whether the facts are "unrealistic or nonsensical" or even "extravagantly fanciful," but rather it is their conclusory nature that "disentitles them to the presumption of truth." *Id.* at 681. Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 546 (2007). "While the pleadings of *pro se* litigants are 'liberally construed,' they must still comply with procedural rules governing the proper form of pleadings." *Hopkins v. St. Lucie County School Bd.,* 399 F. App'x 563, 565 (11th Cir. 2010) (unpublished) (citations omitted) (applying the pleading standards of *Iqbal* and *Twombly* to a *pro se* complaint).[1]

## IV. DISCUSSION

### A.   *Failure to Exhaust Administrative Remedies*

For the exhaustion requirement to be met under the PLRA, the prisoner "must . . . [properly] exhaust all 'available' remedies prior to filing

---

[1] Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority.

suit." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  To properly exhaust all remedies, the prisoner must "take each step within the administrative process" and "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)). Proper exhaustion requires not only filing a grievance concerning the allegations in the Complaint, but filing the grievance in compliance with the procedures provided by the Florida Department of Corrections ("FDOC").  *Woodford*, 548 U.S. at 90-91.

The Florida Administrative Code delineates procedures for inmates to file a grievance against their prison or one of its officials. The inmate must first file an informal grievance, with several exceptions, including for medical grievances.  Fla. Admin. Code § 33-103.005, § 33-103.006(3)(e). Medical grievances may be brought initially as formal grievances at the institutional level within 15 days of "[t]he date on which the incident or action being grieved occurred."  Fla. Admin. Code § 33-103.006, § 33-103.011.  If the inmate is dissatisfied with the response to the formal grievance, he may file an administrative appeal to the Office of the Secretary within 15 days of the date of the response to the formal grievance.  Fla. Admin. Code § 33-103.007, § 33-103.011(1)(c).

In this case, Plaintiff properly exhausted administrative remedies in accordance with FDOC's grievance system. On July 7, 2014 Plaintiff filed a sick call request. (ECF No. 46-1 at 9.)  It is undisputed by the parties that Plaintiff then filed two formal grievances—#16 on July 14th and #37 on July 17th—concerning Plaintiff's requests for dental care. (ECF No. 46-1 at 4.) On August 5th, after Plaintiff received the response regarding Grievance #37, Plaintiff appealed Grievance #37. Thus, Plaintiff timely followed the delineated grievance procedures pursuant to Fla. Admin. Code § 33-103.

Defendant contends that Plaintiff failed to satisfy the PLRA's exhaustion requirements because the contents of Plaintiff's grievance did not sufficiently identify the Defendant, the Defendant's alleged deficient medical treatment, or why the medical need was serious. Defendant contends that because of this alleged lack of detail, Plaintiff failed to "preserve" the claims in his formal grievances. (ECF No. 46 at 16.)

Defendant's argument conflates the requirements for establishing a motion to dismiss for failure to state a claim with the discrete requirements for a motion to dismiss for failure to exhaust. "[W]hile § 1997(e)(a) requires that a prisoner provide as much relevant information as he reasonably can in the administrative grievance process, it does not require that he do more than that." *Brown v. Sikes*, 212 F.3d 1205, 1207 (11th Cir. 2000). For

example, "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218-19 (11th Cir. 2010).

Rather, to properly exhaust, the PLRA requires that a prisoner comply with prison grievance procedures. *Jones v. Bock*, 549 U.S. 199, 219 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 219. "The only FDOC requirements regarding the contents of grievances are that they must be clearly stated, accurately state the facts, and 'address only one issue or complaint.'" *Cordrey v. Corizon*, No. 5:15-cv-33-MW-CJK, 2015 WL 9839770 (N.D. Fla. Dec. 4, 2015) (quoting Fla. Admin. Code. R. 33-103.007(2)(d), (2)(e), and (2)(f)).

Plaintiff satisfies the FDOC requirements here. At a minimum, Grievance #37 described Plaintiff's attempts to request dental treatment, the period of time during which Plaintiff had been attempting to obtain treatment, that the treatment Plaintiff requested was to treat his cavities and remove the glue left on his teeth, and that his condition was worsening.  (ECF No. 46-1 at 8.) Grievance #37 was preceded by

Grievance #16, and followed by the formal appeal, all of which related to the same issue: the Defendant's alleged continued denial of dental care treatment. Thus, Plaintiff's grievances "accomplished § 1997(e)(a)'s purpose by alerting the prison officials to the problem and giving them the opportunity to resolve it before being sued." *Parzyck*, 627 F.3d at 1219.

Defendant cites *Spaulding v. Woodall*, 4:11-cv-605-MP-CAS, 2015 U.S. Dist. LEXIS 90489 (N.D. Fla. Jul. 13, 2015) for the proposition that the grievance must provide sufficient information to demonstrate that the inmate's medical need is serious.  (ECF No. 46 at 15.) *Spaulding,* however, required Plaintiff to establish subjective knowledge of a serious medical need for purposes of establishing *supervisory* liability. *See Spaulding*, 2015 U.S. Dist. LEXIS 90489 at *4-6. The instant case is distinguishable from *Spaulding* because in this case there is no issue of supervisory liability.

The Court, therefore, concludes that Plaintiff exhausted the available administrative remedies before filing suit and, therefore, Defendant's motion to dismiss based on failure to exhaust should be denied.

## B.    Failure to State a Claim for Deliberate Indifference

Defendant also contends that Plaintiff's complaint should be dismissed for failure to state an Eighth Amendment claim for deliberate

indifference. To prevail on a deliberate indifference claim, a Plaintiff must

prove three components:

> First, []he must satisfy the objective component by showing
> that she had a serious medical need. Second, []he must
> satisfy the subjective component by showing that the
> prison official acted with deliberate indifference to [his]
> serious medical need. Third, as with any tort claim, []he
> must show that the injury was caused by the defendant's
> wrongful conduct.

*Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)(internal

citations omitted).

In the Eleventh Circuit, a Plaintiff has a "serious medical need" when

the condition "is one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth*

*Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). "In the alternative, a serious

medical need is determined by whether a delay in treating the need

worsens the condition." *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1307

(11th Cir. 2009)(citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176,

1187 (11th Cir. 1994)).  In either scenario, "the medical need must be one

that, if left unattended, poses a substantial risk of serious harm." *Farrow v.*

*West*, 320 F.3d 1235, 1234 (11th Cir. 2003).

Defendant contends that Plaintiff has failed to state a claim because Plaintiff's grievances relate only to the denial of routine dental care. (ECF No. 46 at 16.) This argument understates the law and the complaints lodged by Plaintiff about his worsening dental situation.  Courts have stated that when addressing dental issues that "[i]n certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show an objectively substantial risk of serious harm." *Farrow*, 320 F.3d at 1243-44 (finding that granting Defendant's motion for summary judgment was inappropriate because there was a genuine issue of material fact surrounding the objective prong of a deliberate indifference claim where a Plaintiff's gums were bleeding and lost weight while waiting 15 months for dentures); *see also Gilmore v. Hodges*, 738 F.3d 266 (11th Cir. 2013)(finding hearing loss may constitute a serious medical need because the ability to hear is a basic human need that materially affects daily activity and two years of isolation caused by untreated hearing loss could do serious harm to both physical and mental health); *Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974)(holding that the deprivation of needed eyeglasses or

prosthetic services states an Eighth Amendment violation because the deprivation of eyeglasses or prostheses may lead to severe harm).[2]

Taking Plaintiff's factual allegations as true and liberally construing the complaint, Plaintiff's statement that he was denied dental treatment for the entire duration of his stay at LCI— a combined total of 13 months— and his allegation that the delay in dental treatment caused his teeth to deteriorate and his mouth to develop sores such that he could not eat (ECF No. 41 at 6 ¶¶9-11) plausibly state a claim. *See Farrow*, 320 F.3d 1235.

Defendant's reliance on *Bumpus v. Watts*, 448 F. App'x 3 (11th Cir. 2011), is misguided because *Bumpus* did not hold that the denial of routine dental treatment could never give rise to serious medical need. Instead, the court there found only that the Plaintiff had failed to state a claim because the Plaintiff did not allege a serious medical need when Plaintiff "only asserted that routine dental care would prevent future dental problems." *Id.* at 6. In contrast in this case, Plaintiff alleges that the harms already were taking place.

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued before October 1, 1981.

To establish the subjective second component of a deliberate indifference claim, "the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown v. Johnson*, 387 F.3d 1344,1351 (11th Cir. 2004)(*citing McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999)). "In cases that turn on the delay in providing medical care, rather than the type of medical care provided," the Eleventh Circuit has laid out factors to guide the analysis: "where the prisoner has suffered increased physical injury due to the delay, we have consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *Goebert,* 510 F.3d at 1327(*citing Hill*, 40 F.3d at 1189.  Negligent diagnosis or treatment of a medical condition does not constitute a wrong under the Eighth Amendment, *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999), and mere differences of opinion between an inmate and the prison medical staff about treatment or diagnosis do not rise to the level of a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

However, "[u]nder section 1983 'knowledge of the need for medical care and intentional refusal to provide that care has consistently been held to surpass negligence and constitute deliberate indifference."  *Gilmore v.*

*Hodges*, 738 F.3d 266, 274 (11th Cir. 2013)(quoting *Carswell v. Bay Cnty.*, 854 F.2d 454, 457 (11th Cir. 1988)).  Further, "'a party that willfully blinds itself to a fact . . . can be charged with constructive knowledge of that fact.' Choosing to deliberately disregard without any investigation or inquiry, everything any inmate says amounts to willful blindness." *Goebert*, 510 F.3d at 1328 (quoting *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 902 (11th Cir. 2003)).

Plaintiff alleges that Defendant became aware of Plaintiff's need for dental treatment in the beginning of May 2013 when Defendant told Plaintiff to submit a request. (ECF No. 41 at 7 ¶28.) Accepting Plaintiff's allegations as true,  Defendant  acknowledged Plaintiff's need for dental attention when Defendant said she would take the glue off right away, that she "couldn't believe" S.F.R.C. left the glue on, and that Plaintiff should request to see Defendant soon if he was not seen within the following few weeks. (ECF No. 41 at 7-8 ¶28.) This conversation alone suggests that Defendant had a subjective knowledge of a medical need that, at a minimum, could become serious if treatment was delayed.

In any event, Defendant at least became aware of Plaintiff's desire for dental treatment, the amount of time that Plaintiff had been waiting to

receive treatment, and the variety of methods by which Plaintiff had attempted to obtain treatment—including submitting a sick call request—when Plaintiff submitted Grievance #16 on July 16th, to which Defendant herself responded.  Defendant's knowledge that Plaintiff submitted a sick call request plausibly suggests that Defendant knew Plaintiff's medical need was serious because inmates were supposed to use sick call for the very purpose of reporting medical problems.  In fact, the response to Plaintiff's appeal specifically told Plaintiff to use a sick call request if Plaintiff experienced problems so that Plaintiff could speak with the dental staff. (ECF No. 46-2 at 5.) Defendant, however, knew Plaintiff had already done that. (ECF No. 46-1 at 9.)

Further, Plaintiff alleges that Defendant stated that she hoped Plaintiff's teeth fell out. In short, Plaintiff has alleged facts that plausibly suggest Defendant subjectively knew Plaintiff had a medical need, that Plaintiff's medical need was serious or could become serious if treatment was delayed, and that Defendant disregarded that risk by failing to provide treatment to Plaintiff for a year without any investigation. *See Goebert*, 510 F.3d at 1328 (finding that deliberately disregarding a Plaintiff's complaints without any investigation could amount to willful blindness and constitute deliberate indifference).  Accordingly, the Court concludes that Plaintiff's

complaint states enough facts to satisfy the subjective prong of a deliberate indifference claim for the purposes of a motion to dismiss.

The third prong of a deliberate indifference claim, causation, can be proven by showing personal participation in the constitutional violation. *Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) (per curiam). Plaintiff alleges that Defendant was the only dentist at LCI and was responsible for providing all dental care during his time at LCI. (ECF No. 41 at 8 ¶29.)  Thus, Plaintiff satisfies this last prong by alleging that Defendant was the one who refused to provide dental care and that Defendant's refusal to provide dental care caused Plaintiff harm.

Accordingly, the Court concludes that Plaintiff's complaint states a constitutional claim for deliberate indifference and, therefore, Defendant's motion to dismiss based on failure to state a claim for deliberate indifference should  be denied.

## C.    *Medical Negligence*

Defendant says that Plaintiffs' claims for medical negligence must be dismissed for failure to comply with the medical malpractice pre-suit notice requirements. (ECF No. 46 at 20.) Under Florida law, a claimant must first comply with the pre-suit notice and investigation requirements of Florida

Statutes Sections 766.106 and .203 before bringing any personal injury claim for medical malpractice.  Failure to comply with these pre-suit requirements requires dismissal of the claim. Fla. Stat. § 766.206(2). Plaintiff concedes the medical negligence claim should be dismissed for failure to comply with statutory pre-suit notice requirements. (ECF No. 49 at 5.) Thus, the medical negligence claim should be dismissed without prejudice.

### D.   Remedies

Defendant also argues that Plaintiff's claims for declaratory relief should be dismissed for mootness because Plaintiff has been transferred to a different institution. (ECF No. 46 at 22.) Defendant is correct.

"The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief." *McKinnon v. Talladega Cnty.*, 745 F.2d 1360, 1363 (11th Cir. 1984)(*citing Holland v. Purdy*, 457 F.2d 802 (5th Cir. 1972)). Plaintiff concedes that his request for declaratory relief must be dismissed as moot. Thus, it is respectfully recommended that Plaintiff's claims for declaratory relief should be dismissed as moot and Defendant's motion to dismiss the declaratory relief claim should be granted.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF

No. 46) should be **GRANTED** with regard to Plaintiff's claims for medical

negligence and declaratory relief and in all other respects should be

**DENIED.**

**IN CHAMBERS** this 23rd  day of February 2016.


*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.