IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TAUG WALKER,

      Plaintiff,

v.                                                        CASE NO. 1:15-cv-28-WTH-GRJ

MARIA AKRIDGE,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is ECF No. 92, Defendant's Motion for Summary Judgment. Plaintiff has filed ECF No. 99, a response in opposition. The motion is, therefore, ripe for review. For the reasons discussed below, the undersigned recommends that Defendant's motion for summary judgment be granted.

## I. INTRODUCTION

Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC"), is proceeding *pro se* pursuant to 42 U.S.C. § 1983. (ECF No. 41 ("Compl.").) Plaintiff's claim against Defendant ("Dr. Akridge") centers around his lack of dental care while incarcerated at Lancaster Correctional Institution ("Lancaster C.I."). (Compl.) Plaintiff argues that Dr.

Akridge violated his Eighth Amendment rights by refusing to provide him

with dental care—specifically the removal of glue (cement) left on his teeth

from his braces—during his thirteen months at Lancaster C.I., even after

Plaintiff's repeated attempts to obtain such treatment. (*Id.*)[1]

Dr. Akridge filed a motion for summary judgment, arguing that (1)

Plaintiff cannot establish Dr. Akridge's deliberate indifference to a serious

medical need; (2) Plaintiff is not entitled to monetary damages under the

Prison Litigation Reform Act ("PLRA") because he has not shown a

physical injury; and (3) Dr. Akridge is entitled to qualified immunity for any

allegations related to Plaintiff's first stay at Lancaster C.I. (ECF No. 92.) In

support of her motion for summary judgment, Dr. Akridge submitted her

own declaration (ECF No. 93-1 at 1–11 ("Akridge Decl.")), Plaintiff's dental

records and inmate requests/grievances (*Id.* at 12–72), and a declaration

of Dr. Steven Feit (ECF No. 93-2 ("Feit Decl.")).

Plaintiff thereafter filed his response in opposition to Dr. Akridge's

motion for summary judgment. (ECF No. 99.) In support of his response,

---

[1] In Plaintiff's complaint, he also alleged a claim for medical negligence. (Compl. at 9.) The Court, however, dismissed this claim because Plaintiff had not complied with the pre-suit requisites to filing a medical negligence case under Florida law. (ECF No. 72.) The Court also dismissed Plaintiff's request for declaratory or injunctive relief as mooted by Plaintiff's transfer to a different institution. (*Id.*)

Plaintiff included his own declaration (*Id.* at 11–13 ("Pl. Decl.")); his dental

records (*Id.* at 14, 17–18 ); and inmate grievances, sick call requests, and

responses. (*Id.* at 15–16, 19.)

## II. EVIDENCE

Plaintiff's version of events is as follows. In April 2013 Plaintiff had

his braces removed while incarcerated at the South Florida Reception

Center ("S.F.R.C."). Due to a time constraint, however, the orthodontist

was unable to remove the remaining glue on Plaintiff's teeth from the

braces. As a result, he was scheduled for a follow-up appointment one

week later. (Compl. at 6; Pl. Decl. at 1.)

Prior to his follow-up appointment,[2] Plaintiff was transferred to

Lancaster C.I. in May 2013. According to Plaintiff, when he arrived he

spoke with Dr. Akridge about the need to remove the glue from his teeth,

and she told him to write a request if he was not seen in the next three

weeks. Plaintiff says that in late May 2013 he wrote an inmate request to

be seen by dental, and Dr. Akridge responded that Plaintiff would be

---

[2] According to Plaintiff's dental records from S.F.R.C., Plaintiff did not show for his follow-up appointment on April 24, 2013—two days after the removal of his braces—for the removal of the excess cement. (ECF No. 93-1 at 29.)

placed on a waiting list. In July and August 2013, when Plaintiff had yet to be seen by dental, he wrote another request to dental, stating that he was experiencing discomfort from the glue left on his teeth. Plaintiff, however, did not receive a response.[3] (Compl. at 6–7; Pl. Decl. at 1–2.)

He remained at Lancaster C.I. until March 5, 2014, without ever being seen by Dr. Akridge. According to Plaintiff, during that time his teeth started to break when he would brush them and the glue from his teeth rubbed against his tongue and the inside of his mouth, causing painful sores. (Compl. at 6; Pl. Decl. at 2.)

Plaintiff then returned to S.F.R.C. on March 5, 2014, where he submitted a request to dental to have the glue removed from his teeth as well as to have a wisdom tooth removed. Plaintiff was seen in late May 2014, and the dentist documented numerous cavities and other damage to Plaintiff's teeth since his last visit. She also scheduled Plaintiff another appointment to have the glue removed from his teeth. (Compl. at 7; Pl. Decl. at 2.)

Plaintiff, however, was transferred back to Lancaster C.I. on June 9,

---

[3] Although Plaintiff says he filed these grievances and requests in 2013 regarding his dental treatment at Lancaster C.I., he did not attach copies of these to any of his filings, and there is no record that he ever filed these. (*See* ECF No. 46-1.)

2014, before his appointment at S.F.R.C. According to Plaintiff, in July he wrote an inmate sick call request to dental stating that his teeth were deteriorating, breaking, and staining and that he was experiencing pain in his mouth.[4] Dr. Akridge responded to this request, stating that Plaintiff would be seen after he was out of confinement. Plaintiff then wrote a grievance regarding this response, and the acting Warden approved the grievance. (Compl. at 7; Pl. Decl. at 2.)

According to Plaintiff, Dr. Akridge was very angry with Plaintiff for filing a grievance against her. She then told Plaintiff, "You want to write grievances. I can't wait until you get in my chair, so I can play in your mouth. If you want dental care, get out of confinement. I don't care what no one says. I hope your teeth fall out." And then Dr. Akridge did not treat Plaintiff prior to his transfer to Suwannee Correctional Institution ("Suwannee C.I.") on September 5, 2014. (Compl. at 7; Pl. Decl. at 2.)

Lastly, Plaintiff says that during his thirteen-month stay at Lancaster

---

[4] Although Plaintiff says in his complaint and declaration that his inmate sick-call request included complaints about pain in his mouth as well as concerns that his teeth were deteriorating, breaking, and staining, the inmate sick-call request he attached to his response contradicts this allegation. Instead, it states only, "I was suppose[d] to get the glue removed from my teeth, teeth cleaned, and fill in's. Ever[ ] since last year April this was suppose[d] to happen but I keep getting transffered [sic] from South Florida every time my appointment comes up. It's in the computer. I don't know why I haven't been seen yet." (ECF No. 99 at 19.) Notably, this inmate sick-call request contains no allegations of pain or problems with his teeth.

C.I. during which he did not receive dental treatment, his teeth chipped, stained, and deteriorated. Additionally, he endured painful activity in his mouth, which led to the removal of a piece of gum. Plaintiff also says that the dentist at Suwannee C.I. did not thoroughly examine all of his teeth and that his dental file is missing documents. (Pl. Decl. at 2–3.)

Dr. Akridge and the available medical and grievance records document a different story. Plaintiff received his initial dental exam at the Central Florida Reception Center ("C.F.R.C.") on December 12, 2012. This initial exam revealed that Plaintiff had orthodontic wires and bands on teeth #3–14 and #19–30. Plaintiff filed a sick-call request on January 9, 2013, while at C.F.R.C., but he refused to have his orthodontic wires and bands removed. (Akridge Decl. at 6; ECF No. 93-1 at 13–14.)

Plaintiff was then transferred to Sumter Correctional Institution ("Sumter C.I.") on January 25, 2013, and his dental records were reviewed. Then on January 29, 2013, Plaintiff met with a dentist there regarding his braces. (Akridge Decl. at 7; ECF No. 93-1 at 15.)

Plaintiff was then transferred to S.F.R.C., and on April 22, 2013, the dentist removed his orthodontic brackets and bands. Plaintiff, however, needed to return to have the excess cement removed from his teeth. That

appointment was scheduled from April 24, 2013. The records reflect that even though an appointment was scheduled, Plaintiff did not show. Plaintiff then filed an inmate request on April 28, 2013, noting that he was supposed to have his teeth polished to remove the excess cement on his teeth, and on May 3, 2013, Plaintiff was told to check the call-out list for a new appointment in response to his request. (Akridge Decl. at 7; ECF No. 93-1 at 29, 40.)

Plaintiff then arrived at Lancaster C.I. on or around May 8, 2013. According to Dr. Akridge, she never spoke with, consulted with, examined, or treated Plaintiff. Dr. Akridge's only personal interaction with Plaintiff was during a group dental orientation, which Plaintiff attended on May 13, 2013. She does not recall meeting or speaking with Plaintiff during this orientation. (Akridge Decl. at 4, 7.)

On May 13, 2013, Dr. Akridge reviewed Plaintiff's dental chart to determine if there was any need for urgent or emergent dental services.[5]

---

[5] According to the Florida Administrative Code, "Emergency dental services include treatment for trauma, control of bleeding, and acute infection. Emergency dental services shall be available to inmates 24-hours a day." Fla. Admin. Code 33-402.101(2)(a) Additionally "[u]rgent dental services include treatment for chipped teeth, tooth pain, lost crowns or fillings, or broken dentures. All Department of Corrections dental clinics shall hold daily sick call, when a dentist is available, to provide dental access to those inmates who cannot wait for a routine appointment but do not meet the criteria for emergency dental services." Fla. Admin. Code 33-402.101(2)(b); (See also Akridge Decl. at 3.).

Dr. Akridge then determined that Plaintiff needed only routine treatment.[6]

But at that time, Plaintiff was ineligible for routine treatment because the

Florida Department of Corrections has a policy that inmates must be

incarcerated for at least 6 months to be placed on the schedule for routine

treatment. Thus, Plaintiff would have become eligible for routine treatment

on June 7, 2013. However, Plaintiff made no requests for dental services

during his first stay at Lancaster C.I., from May 8, 2013, to March 5, 2014.

(Akridge Decl. at 4, 7; ECF No. 93-1 at 12–41, 46–49.)

Plaintiff then returned to S.F.R.C. in March 2014, and his records

were reviewed on March 11, 2014. On May 27, 2014, he filed a request

saying he needs a wisdom tooth removed due to the pain it is causing him,

which was making it difficult for him to eat, and that the problem started in

May 2013. Notably, Plaintiff had not complained of this pain while at

Lancaster C.I. (Akridge Decl. at 7; ECF No. 93-1 at 39.)

In response to his request, Plaintiff then had x-rays and was

examined on June 2, 2014. The dentist noted that Plaintiff's third molar

was okay, that tooth #31 had begun the process of decalcification, that

there was no emergency present, and that Plaintiff should be scheduled for

---

[6] In contrast to the aforementioned services, routine dental services "are available by request and include examination, diagnosis, and treatment provided per a written treatment plan." Fla. Admin. Code 33-402.101(2)(d).

treatment. Additionally, the dentist created a treatment plan. (Akridge Decl. at 8; ECF No. 93-1 at 29.)

The notes from this June 2, 2014, visit do not reveal any abnormalities with Plaintiff's cheeks, gum, or tongue. Additionally, there is no notation that Plaintiff's teeth were chipped, cracked, or broken, or that Plaintiff had excess cement on his teeth. The notes also do not reveal that Plaintiff complained of any of these problems during his visit. (Akridge Decl. at 7–8; ECF No. 93-1 at 20–21, 29, 39.)

Before receiving any treatment, however, Plaintiff returned to Lancaster C.I. around June 4, 2014. Dr. Akridge again reviewed Plaintiff's dental chart on June 9, 2014, but again she did not see a need for any urgent or emergency dental services. Then on July 7, 2014, Plaintiff made his first request for dental treatment at Lancaster C.I. through a sick-call request. In his request, he stated that he needed dental care and that since last April he was supposed to have glue removed from his teeth and cavities filled. Dr. Akridge, however, did not personally respond to this sick-call request; Nurse Rhodan stamped the request and marked it as a request for routine services. Further, Dr. Akridge asserts that she was not the individual who wrote at the bottom of the request that Plaintiff would be

called out when he is out of confinement. (Akridge Decl. at 4–5, 8; ECF No. 93-1 at 37, 39, 52–53.)

Dr. Akridge says that her only other involvement with Plaintiff was responding to his two formal grievances. During Plaintiff's two stays at Lancaster C.I., he filed twenty-one informal grievances and fourteen formal grievances. Of all these grievances, only two of the formal grievances relate to his dental treatment.[7] Specifically, on July 13, 2014, Plaintiff wrote a grievance stating that he had made multiple requests to dental regarding his teeth and that he has not received any responses. Dr. Akridge responded to this grievance on July 16, 2014, stating, "I have never received any correspondence from you, including requests for treatment or informal grievances. You have put in a request for treatment at another institution and, per our dental software, you are on our callout list and will be called out for treatment when it is your turn." That grievance was denied. (ECF No. 46-1; ECF No. 93-1 at 38; Akridge Decl. at 5.)

Prior to receiving that response, however, Plaintiff wrote another inmate grievance on July 15, 2014, regarding his inmate sick-call request

---

[7] This information comes from an affidavit supplied in support of Defendant's motion to dismiss. (*See* ECF No. 46-1.) This affidavit was from Gregory Arline, the Assistant Warden of Programs, who maintains records of formal and informa grievances filed at Lancaster C.I. (*Id.* at 1.)

from July 7, 2014, which is discussed above. In this grievance Plaintiff stated that he has had an appointment since the previous April regarding the glue on his teeth and that his teeth are getting worse by the day. Plaintiff also said that he really needs his teeth cleaned and his cavities filled. This grievance was approved on July 28, 2014, and stated, "You arrived at Lancaster Correctional Institution on June 9, 2014. On July 7, 2014 you were placed on my callout waiting list and will be seen when it is your turn. If you are still housed in Confinement you will be escorted up to Dental for your treatment." (ECF No. 46-1; ECF No. 93-1 at 37.)[8]

Dr. Akridge asserts that she was not angry with Plaintiff for filing a grievance and that she does not have any personal dislike or ill will for Plaintiff. Additionally, although Plaintiff was on the waiting list as of July 7, 2014—the date he filed his inmate sick-call request—he was transferred

---

[8] The only grievance appeal Plaintiff filed related to dental was an appeal to this grievance that he filed in August 2014, wherein he stated that despite the fact that his grievance was approved, he still did not feel that the proper action was being taken. He said that his teeth have been chipping and changing colors and that dental should have to pay to fix these problems. (ECF No. 46-2 at 8.) This appeal was denied on September 3, 2014, informing Plaintiff of the following: "you are on the Dental Treatment list and you will be called out when it is your turn even if you housed in Confinement. All dental visits that are determined to be a non-emergent nature will incur a co-payment. This practice is in keeping with the Florida Statutes." (*Id.* at 7.) This appeal includes the only mention of his teeth chipping and changing colors during his time at Lancaster C.I.; there was no mention of this in his grievances or inmate sick-call request.

from Lancaster C.I. on September 4, 2014, before his appointment. (Akridge Decl. at 6, 8; ECF No. 93-1 at 54–55.)

Plaintiff then arrived at Suwannee C.I. on September 9, 2014. On September 12, 2014, the dentist examined Plaintiff and amended his treatment plan. Plaintiff complained of discomfort around tooth #32, which was determined to be horizontally impacted, and tooth decay was noted on tooth #14. Plaintiff was referred to an oral surgeon regarding tooth #32. Notably, however, the treatment notes do not reveal complaints of or indications of problems other than around tooth #32. (Akridge Decl. at 8; ECF No. 93-1 at 20–21, 28.)

On November 14, 2014, an oral surgeon extracted tooth #32. The surgeon's notes mention that Plaintiff complained of pain around tooth #32.[9] But notably there were no complaints of or evidence about problems with Plaintiff's tongue, cheeks, or chipped, cracked, or broken teeth. (Akridge Decl. at 9; ECF No. 93-1 at 24, 30–31.)

Plaintiff also later underwent treatment for acute pericoronitis[10]

---

[9] Notably, any issue regarding tooth #32 was unrelated to the presence of dental glue on Plaintiff's teeth because his braces did not extend to tooth #32. (ECF No. 93-1 at 13.)

[10] Dr. Akridge defines this as "inflammation of the gum tissue surrounding the crown portion of a tooth." (Akridge Decl. at 9.)

around tooth #17 in March and April 2015 by the dentist at Suwannee C.I.

This treatment involved the removal of gum tissue from tooth #17. And

finally on May 22, 2015, Plaintiff's teeth were polished and the cement was

removed from his teeth. He also received prophy, fluoride, and oral health

instructions. Plaintiff was charged a $5 co-pay for routine treatment.

(Akridge Decl. at 9; ECF No. 93-1 at 25–26.)

## III. SUMMARY JUDGEMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), the entry of

summary judgment is appropriate only when the Court is satisfied that

"there is no genuine dispute as to any material fact and the moving party

is entitled to a judgment as a matter of law." In applying this standard, the

Court must examine the pleadings, depositions, answers to interrogatories,

and admissions on file, together with any affidavits and other evidence in

the record "in the light most favorable to the nonmoving party." *Samples on

Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986), the moving party bears the initial burden of establishing the

nonexistence of a triable issue of fact. If the movant is successful on this

score, the burden of production shifts to the non-moving party who must

then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgement stage.

*Beard v. Banks,* 548 U.S. 521, 530 (2006). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

The Court must view the evidence and inferences drawn from the underlying facts in the light most favorable to the non-movant. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). But, "when opposing parties tell two different stories, one of which is blatantly

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (stating that to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff"). "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

## IV. DISCUSSION

Plaintiff alleges that Dr. Akridge was deliberately indifferent to his medical needs in violation of his Eighth Amendment rights. (Compl.) Dr. Akridge, however, contends that Plaintiff failed to show that she was deliberately indifferent to a serious medical need, that Plaintiff is not entitled to monetary damages because of a lack of physical injury, and that Dr. Akridge is entitled to qualified immunity regarding allegations from

Plaintiff's first stay at Lancaster C.I. (ECF No. 92.) Each of Dr. Akridge's arguments is discussed in turn below.

### A. Plaintiff failed to show that Dr. Akridge was deliberately indifferent to any serious medical need of Plaintiff.

Dr. Akridge first argues that Plaintiff cannot establish that she was deliberately indifferent to a serious medical need. She says this is so because Plaintiff failed to show that he suffered from a serious medical need and because Plaintiff failed to show that Dr. Akridge acted with deliberate indifference with regard to Plaintiff's dental concerns. (ECF No. 92 at 29–34.) Because Plaintiff has failed to show that he had a serious medical need and because Dr. Akridge determined that Plaintiff required only routine treatment and ensured Plaintiff was on the waiting list after she was notified of Plaintiff's complaints, the Court concludes that Dr. Akridge is entitled to summary judgment on Plaintiff's deliberate indifference claim.

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment prohibition against cruel and unusual punishment. 429 U.S. 97 (1976). To establish an Eighth Amendment violation stemming from the deprivation of medical attention, the prisoner must set forth evidence of an objectively serious medical need and prove that the officials acted with

attitudes of deliberate indifference to his needs. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," which is one that is so grave that, "if left unattended, pos[es] a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (alterations in original) (internal quotation marks omitted). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Further, a prisoner must demonstrate a "subjective intent to punish," by showing an attitude of "deliberate indifference," which requires showing an "aware[ness] of facts from which the inference could be drawn that a substantial risk of harm exists [ ] and . . . draw[ing of] the inference." *Taylor*, 221 F.3d at 1258 (alteration in original) (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 837 (1994)). In other words, a prisoner must prove

four things: "an objectively serious need, an objectively insufficient

response to that need, subjective awareness of facts signaling the need,

and an actual inference of required action from those facts." *Id.*

Plaintiff's claim fails first because he has not demonstrated he had a

serious medical need. The Eleventh Circuit has defined a serious medical

need as (1) "one that has been diagnosed by a physician as mandating

treatment or one that is so obvious that even a lay person would easily

recognize the necessity for a doctor's attention," or (2) one where " a delay

in treating the need worsens the condition." *Mann v. Taser Int'l, Inc.*, 588

F.3d 1291, 1307 (11th Cir. 2009) (quoting *Hill v. Dekalb Reg'l Youth Det.*

*Ctr.*, 40 F.3d 1176, 1187–88 (11th Cir. 1994), *overruled in part on other*

*grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Regardless, "the

medical need must be one that, if left unattended, poses a substantial risk

of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

In the context of dental care as is the case here, "the need for dental

care combined with the effects of not receiving it may give rise to a

sufficiently serious medical need to show objectively a substantial risk of

serious harm." *Farrow v. West*, 320 F.3d 1235, 1243–44 (11th Cir. 2003).

However, "not all claims regarding improper dental care will be constitutionally cognizable. Dental conditions, like other medical conditions, may be of varying severity." *Gilmore v. Hodges*, 738 F.3d 266, 276 (11th Cir. 2013). For example, "routine discomfort does not qualify as a serious medical need." *Alvarado v. Manocha*, No. 4:09cv319-MP/WCS, 2010 WL 5856024, at *10 (N.D. Fla. Dec. 15, 2010) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)), *report and recommendation adopted*, 2011 WL 690208 (N.D. Fla. Feb. 18, 2011).

Plaintiff's dental concerns at Lancaster C.I. fail to constitute a serious medical need because there is nothing in the record demonstrating that his complaints posed a substantial risk of serious harm if left unattended. Plaintiff's only request regarding his dental care at Lancaster C.I. was an inmate sick-call request made on July 7, 2014, in which Plaintiff said only that he was supposed to have the glue from his teeth removed, his teeth cleaned, and several cavities filled. (ECF No. 93-1 at 38.) Plaintiff's request by its very nature was a request for routine treatment. Plaintiff's sick call request did not include any allegations regarding tooth or mouth pain or say that his teeth were chipping or deteriorating. (*Id.*)

The lack of the serious nature of Plaintiff's complaints is further

underscored by Plaintiff's two inmate grievances, which make no mention of pain or problems with Plaintiff's teeth. (ECF No. 46-1 at 8; ECF No. 93-1 at 38.)  The only reference to any problem was Plaintiff's conclusional statement that "my teeth [are] getting worser [sic] by the day." (ECF No. 46-1 at 8.)

Thus, the evidence demonstrates without contradiction that Plaintiff failed to complain to Dr. Akridge or anyone else at Lancaster C.I. of any serious medical need concerning his teeth.  Instead, it is undisputed that Plaintiff's only complaint was about the failure to remove excess glue from his teeth, clean his teeth, and fill his cavities.[11]  And event these complaints were not accompanied by complaints about pain. *See Curtis v. Pandit*, No. 5:04cv387-RH/WCS, 2006 WL 4093764, at *12 (N.D. Fla. Dec. 20, 2006) ("[R]egardless of how 'serious' a cavity might be, the issue is treatment for pain."), *report and recommendation adopted*, 2007 WL 646617 (N.D. Fla. Feb. 27, 2007)

The mere fact that glue may have been left on his teeth does not give rise to a serious medical need. This is confirmed by Dr. Steven Feit in his affidavit.  Dr. Feit opines: "It is also my opinion that the existence of

---

[11] It is unclear from the dental record what cavities, if any, Plaintiff had that required filling at the time he filed his inmate sick-call request on July 7, 2014.

orthodontic glue on an individual's teeth following the removal of orthodontic brackets does not mandate treatment or pose a substantial risk of harm if left unattended. . . . It will not cause harm to the tooth/teeth [i]f left in place for an extended period of time. In fact it is left in place all the while a patient is undergoing orthodontic treatment which typically requires several years of treatment depending on the case parameters." Feit Decl. at 3.

In addition to the lack of any evidence that Plaintiff complained of a serious medical need while at Lancaster C.I., Plaintiff's dental records from the relevant time period demonstrate that Plaintiff was not suffering from a serious medical need. Prior to Plaintiff's first arrival at Lancaster C.I., Plaintiff's only dental treatment records disclose that he had a comprehensive exam, which confirmed Plaintiff had braces and then had the braces removed. Although Plaintiff may have had excess cement on his teeth—which as confirmed by Dr. Feit does not cause harm to teeth if left on for extended periods of time—there is no evidence in Plaintiff's dental records that he required any additional treatment or had any other complaints regarding his dental care. (Akridge Decl. at 6–7; ECF No. 93-1 at 13–15.) Therefore, it is not surprising that when Dr. Akridge reviewed

Plaintiff's dental records upon his arrival at Lancaster C.I., she had no reason to believe Plaintiff was suffering from a serious medical need or that he required anything other than routine treatment.

Prior to his second arrival at Lancaster C.I., Plaintiff underwent an examination and received x-rays after filing a request regarding pain he was experiencing from a wisdom tooth—pain he did not complain about while at Lancaster C.I. Upon examination, the dentist found that Plaintiff's wisdom tooth was okay but that tooth #31 had begun the process of decalcification. Notably, any issue regarding tooth #31 is completely unrelated to the presence of dental glue on Plaintiff's teeth because Plaintiff's braces did not extend to tooth #31. (ECF No. 93-1 at 13.)

More importantly, the dentist determined that there was no emergency and that Plaintiff should be rescheduled for treatment. Plaintiff then returned to Lancaster C.I. prior to receiving any other treatment. (Akridge Decl. at 7–8; ECF No. 93-1 at 20–21, 29, 39.) So again upon review of Plaintiff's treatment records when he returned to Lancaster C.I., Dr. Akridge had no reason to believe Plaintiff was suffering from a serious medical need or that Plaintiff required anything other than routine treatment.

In addition to his treatment records, none of Plaintiff's other records evidence that he was suffering from a serious medical need. Plaintiff's transfer summaries only mention pending appointments for bi-annual dental examinations—one scheduled for December 2014 and one scheduled for April 2015— and do not contain any notations of complaints of dental problems or pain. Lastly, Plaintiff did not raise any dental concerns or state that he had any pending dental appointments on the FDOC Pre-Special Housing Health Assessment forms he filled out. (ECF No. 93-1 at 42–67.)

In sum, despite Plaintiff's unsupported and self serving allegations in his complaint regarding pain and discomfort and claims that his teeth were deteriorating and breaking, Plaintiff's dental records do not contain any evidence that Plaintiff was suffering from pain or discomfort; deteriorating, broken, chipped, or stained teeth; or sores in his mouth or on his tongue. Thus, during his time at Lancaster C.I., there is no evidence that Plaintiff was suffering from a serious medical need.

Dr. Akridge and Dr. Feit also have offered expert opinions based upon Plaintiff's dental records that establish Plaintiff did not have a serious medical need. Dr. Akridge opines, "there is no indication in [Plaintiff's]

dental records that, while he was at Lancaster, he suffered from any dental need mandating treatment or any dental need that posed a substantial risk of harm if left unattended." (Akridge Decl. at 9.) Dr. Feit echoed this same observation. Dr. Feit concluded,

> Based on my education, training, and over 20 years' experience in dentistry, it is my opinion that the dental and medical records do not indicate that [Plaintiff] suffered from any dental need, including a need to polish his teeth to remove orthodontic glue remaining on his teeth, from May 2013 through September 2014, that mandated treatment or one that posed a substantial risk of harm if left unattended. Neither do these records indicate that [Plaintff] was suffering from any risk of serious harm.

(Feit Decl. at 2.) *Cf. Harris v. Donald*, 266 F. App'x 804 (11th Cir. 2008) (relying on medical records and expert's opinions in determining deliberate indifference claim).

Thus, based on the dental records and the opinion evidence—which is not rebutted by any opinion evidence or medical records offered by Plaintiff— the Court concludes that Plaintiff has failed to demonstrate he was suffering from a serious medical condition during his time at Lancaster C.I.—particularly any related to the failure to remove glue from his teeth, clean his teeth, or fill cavities. *Cf. Harris v. Donald*, 266 F. App'x 804 (11th Cir. 2008) (relying on medical records and expert's opinions in deciding a

deliberate indifference case).

This case is nothing like those cases where courts have found an inmate suffered a serious medical need as a result of not receiving dental treatment. Those cases involve situation where the inmate suffered from either continued complaints of severe pain or there was evidence of actual harm to the inmate's health or teeth as a result of the failure to provide dental care. *See, e.g.*, *Farrow*, 320 F.2d at 1244–45 (finding serious medical need where inmate in need of dentures suffered from pain, continual bleeding and swollen gums, two remaining teeth slicing into gums, and weight loss); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) (finding potential deliberate indifference claim where there was evidence of bleeding gums, broken teeth, and an inability to eat properly); *Watts v. Flowers*, No. 1:10-cv-3107-AKK-TMP, 2013 WL 3816549, at *9 (E.D. Ala. July 22, 2013) (finding a serious medical need where prisoner dental patient complained of serious pain over many months with minimal treatment); *Smith v. Pearson*, No. 11-60165-CIV-COHN, 2011 WL 1430329, at *2, *4 (S.D. Fla. Mar. 4, 2011) (finding serious medical need where inmate provided evidence of severe gum disease, bleeding gums, and loose teeth).

Plaintiff's claim in this case lacks any evidence documenting continued complaints of pain or evidence of damage to his teeth while at Lancaster C.I. And there is no evidence that Plaintiff suffered actual harm to his teeth or damage to his health as a result of the delay in removing the excess glue from his teeth.  Because Plaintiff cannot show that he suffered from a serious medical need, he cannot show that Dr. Akridge was deliberately indifferent to a serious medical need.

Even assuming, however, that Plaintiff could establish that he suffered from a serious medical need—which the evidence does not support—Plaintiff's claim still fails because has cannot demonstrate that Dr. Akridge's response was so inadequate as to constitute deliberate indifference.

To show an individual acted with deliberate indifference, a plaintiff must show the individual acted with a "subjective intent to punish" by showing  an "aware[ness] of facts from which the inference could be drawn that a substantial risk of harm exists [ ] and . . . draw[ing of] the inference." *Taylor*, 221 F.3d at 1258 (alterations in original).  Tthe response must have been so inadequate as to "constitute an unnecessary and wanton infliction of pain," which is more than "merely accidental inadequacy, negligence in

diagnosis or treatment, or even medical malpractice actionable under state law." *Id.*

Here, the evidence of record is far from making that showing. Although Plaintiff claims—without support—Dr. Akridge ignored his complaints for treatment and refused to treat him because she was angry with him for filing grievances against her, the medical records evidence that Dr. Akridge examined Plaintiff's dental records and determined that nothing other than routine treatment was necessary.

Additionally, after Plaintiff filed his only inmate sick-call request concerning his dental care at Lancaster C.I., he was put on the waiting list immediately for routine treatment.  Notably, Dr. Akridge responded to both of his inmate grievances regarding his dental care, assuring Plaintiff that he was on the waiting list and would be called when it was his turn, regardless of whether he was in confinement. The evidence establishes without dispute that the only reason Plaintiff was never treated at Lancaster C.I. was because he was transferred prior to his appointment. (Akridge Decl. at 4–5, 7–8; ECF No. 93-1 at 12–41, 46–49, 52–53.) Dr. Akreidge of course had nothing to do with Plaintiff's transfer.

Dr. Akridge examined Plaintiff's records and found that no urgent or

emergency treatment was necessary. He then ensured that Plaintiff was on

the waiting list for routine treatment following his inmate sick-call request.

Although this course of action was different from the treatment Plaintiff

wanted, it is not evidence of a deliberately indifferent or insufficient

response to a medical need. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th

Cir. 1991) ("Nor does a simple difference in medical opinion between the

prison's medical staff and the inmates to the latter's diagnosis or course of

treatment support a claim of cruel and unusual punishment.")

Additionally, to the extent Plaintiff is arguing that a delay in his dental

treatment constituted deliberate indifference, Plaintiff has also failed to

submit evidence supporting this cliam. Although "[s]ome delay in rendering

medical care may be tolerable depending on the nature of the medical

need and the reason for the delay," only if the delay "is tantamount to

unnecessary and wanton infliction of pain may [it] constitute deliberate

indifference." *Adams v. Poag*, 61 F.3d 1537, 1544 (11th Cir. 1995).

Medical treatment that constitutes deliberate indifference must be "so

grossly incompetent, inadequate, or excessive as to shock the conscience

or to be intolerable to fundamental fairness." *Id.*

   As discussed above, Dr. Akridge's treatment of Plaintiff's dental

concerns while he was at Lancaster C.I. did not constitute an unnecessary and wanton infliction of pain nor was it so inadequate as to shock the conscience or be intolerable to fundamental fairness. The delay in treatment Plaintiff received was a result of Plaintiff's failure to seek dental care at Lancaster C.I. until July 7, 2014, and Plaintiff's subsequent transfer from Lancaster C.I. prior to his appointment. Nothing in Plaintiff's record evidences that Dr. Akridge needed to treat Plaintiff immediately or urgently, and nothing in Plaintiff's record reveals that Plaintiff suffered as a result of Dr. Akridge's delay in treatment. Plaintiff's conclusory allegations to the contrary fail to prove otherwise.

Further, Dr. Feit concludes that any alleged delay in treatment, particularly as it related to the removal of the excess cement from Plaintiff's teeth did not cause any harm. Specifically, he stated,

> It is also my opinion, within a reasonable degree of dental probability, that the dental records do not indicate that Dr. Akridge unreasonably delayed in polishing [Plaintiff's] teeth to remove the orthodontic glue remaining on his teeth following the removal of his orthodontic brackets.
> It is additionally my opinion, within a reasonable degree of dental probability, that the outcome for [Plaintiff] would have been the same even if I were to assume that there was an unreasonable delay in polishing [Plaintiff's] teeth. This is especially so since there is no indication in any of the dental or medical records that [Plaintiff] suffered any injuries to his teeth, gums, mouth or cheeks.

> It is further my opinion, within a reasonable degree of
> dental probability, that Dr. Akridge's delay in polishing
> [Plaintiff's] teeth to remove the orthodontic glue remaining on
> his teeth did not cause [Plaintiff] any unnecessary pain, cause
> him any permanent injury, put him at further risk of injury, or
> worsen any dental or medical condition.

 (Feit Decl. at 3–4.)

Accordingly, for all of these reasons the Court concludes that based upon the evidence submitted, Plaintiff has failed to show that Defendant was deliberately indifferent to any serious medical need. Defendant is, therefore, entitled to summary judgment as to Plaintiff's claim of deliberate indifference.

### B. Because Plaintiff failed to prove that he suffered more than *de minimis* injuries as a result of Dr. Akridge's alleged conduct, Plaintiff is not entitled to claims of compensatory or punitive damages.

Dr. Akridge then argues that Plaintiff is not entitled to compensatory or punitive damages because he has failed to demonstrate the requisite injury under 42 U.S.C. § 1997e(e). (ECF No. 92 at 34–35.) Because Plaintiff failed to provide evidence that he suffered any injury from Dr. Akridge's conduct, Plaintiff may not pursue his claims for compensatory or punitive damages against Dr. Akridge.

The Prison Litigation Reform Act ("PLRA") provides limitations on the

recovery of compensatory and punitive damages when a prisoner has not shown that he suffered more than a *de minimis* physical injury. Under the PLRA, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). According to the Eleventh Circuit, the PLRA precludes claims for punitive and compensatory damages absent a showing of physical injury. *Al-Amin v. Smith*, 637 F.3d 1192, 1198 (11th Cir. 2011) (citing *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007)). Because Plaintiff seeks both compensatory and punitive damages, the relevant inquiry is whether Plaintiff has shown a physical injury.

The Court concludes that Plaintiff has failed to show the requisite physical injury to support a claim for punitive or compensatory damages. "In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis." *Mann v. McNeil*, 360 F. App'x 31, 31 (11th Cir. 2010) (quoting *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–13 (11th Cir. 2002)). Although the injuries must be greater than *de minimis*, the physical injuries need not be significant. *Dixon*

*v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007); *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *op. reinstated in part on rehearing*, 216 F.3d 970 (2000).

According to Plaintiff's complaint, he alleges that his teeth were breaking, deteriorating, and staining and that glue was rubbing on his tongue and the inside of his mouth creating sores. (Compl. at 6–8.) However, there is nothing in Plaintiff's dental or medical records evidencing that he actually suffered from any of these alleged injuries as a result of Dr. Akridge's failure to provide dental care while he was at Lancaster C.I. Both Dr. Akridge and Dr. Feit's opinions support that conclusion. (Akridge Decl.; Feit Decl.; ECF No. 93-1 at 12–41.)

Because the dental and medical records at the time Plaintiff was at Lancaster C.I. fail to disclose that Plaintiff suffered anything more than *de minimis* injury as a result of Dr. Akridge's conduct, Plaintiff's conclusory allegations to the contrary are insufficient. *See Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010) ("Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." (citing *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990)). Thus, Plaintiff has failed to establish that

he suffered sufficient physical injury to entitle him to recovery of compensatory and punitive damages regarding the use of chemical agents.[12]

### C. Dr. Akridge is entitled to qualified immunity with regard to Plaintiff's claims against her for the period of May 2013 to September 8, 2013, during Plaintiff's first stay at Lancaster C.I.

Dr. Akridge lastly argues that she is entitled to qualified immunity for any allegations related to Plaintiff's first stay at Lancaster C.I., from the period of May 2013 to September 8, 2013. (ECF No. 27 at 9–12.)

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An official wishing to invoke the affirmative defense of qualified immunity must have been acting within his discretionary authority. *Skop v. City of Atlanta, Georgia,* 485 F.3d 1130, 1136 (11th Cir. 2007).  If a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not

---

[12] Plaintiff, of course, would be permitted to proceed on a claim for nominal damages if he could establish that Dr. Akridge violated his constitutional rights, which he has failed to do.

proper.  *Lee v. Ferraro*, 284 F.3d 1188, 1197-98 (11th Cir. 2002).

To determine whether qualified immunity applies to a government official performing a discretionary function, a court must consider two factors: (1) whether the evidence shows that the official's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009). A court has the discretion to address the two prongs in either order. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The undisputed evidence here demonstrates that Dr. Akridge was a government official acting within her discretionary authority.[13] "Discretionary authority" includes all actions by a government official that

---

[13] In Dr. Akridge's declaration, she states the following:

From approximately 1995 to 2015, I worked as a dentist with the Florida Department of Corrections. I began working as a senior dentist at Lancaster in 2006 and worked there until my retirement in July 2015. Until approximately September 8, 2013, I was an employee of the Florida Department of Corrections. From approximately September 9, 2013 through my retirement, I was employed pursuant to a contract with Smallwood Prison Dental Services, Inc. (Smallwood). Smallwood provided dental services at Lancaster pursuant to its subcontract with Corizon, LLC.

(Akridge Decl. at 2.) Accordingly, or the period within which Dr. Akridge is seeking qualified immunity, she was an employee of the Florida Department of Corrections, and thus a government official.

"were undertaken pursuant to the performance of his duties," and were "within the scope of his authority." *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). A duty of a prison dentist is to provide prisoners with the necessary dental care. Plaintiff's claims against Dr. Akridge involve her discretionary authority to provide dental services.

Because Dr. Akridge was a government official undertaking actions pursuant to the performance of her duty as a prison dentist, the question therefore becomes whether Dr. Akridge violated Plaintiff's clearly established constitutional rights of which a reasonable person would have known.

Because, as discussed above, the evidence does not show that Dr. Akridge violated a constitutional right, Defendant is entitled to qualified immunity for the period of May 2013 to September 8, 2013. *See  Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1264 (11th Cir. 2004) (noting that for a plaintiff to show qualified immunity is improper, he must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation").

# V.  RECOMMENDATION

For the foregoing reasons, it is respectfully **RECOMMENDED** that

Defendant's Motion for Summary Judgment, ECF No. 92, should be

**GRANTED**.

IN CHAMBERS  this 26th day of February 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636**.